## SIMON *v.* SAFE DEPOSIT & TRUST CO. OF BALTIMORE

[No. 139, October Term, 1947.]

*Decided May 19, 1948.*

470

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Richard W. Kiefer* and *Edgar Allan Poe,* with whom was *J. Kemp Bartlett, Jr.,* on a brief, for the appellant.

*George M. White,* with whom were *White & Page* on the brief, for Melville Wilson et al. and Safe Deposit & Trust Company, appellees.

*Cross & Shriver* on a brief for Safe Deposit & Trust Company, appellee.

COLLINS, J., delivered the opinion of the Court.

On May 24, 1902, one Marshall Gulian Wilson, a citizen of Baltimore County, Maryland, at that time sojourning in France, executed a deed of trust to the Safe Deposit & Trust Company of Baltimore. This trust consisted of bonds, securities, and choses in action of the value of approximately $25,000 at that time. The present value of the principal of the trust is now approximately $20,000. The trust provision, carrying the principal of this trust, for interpretation, follows:

"In trust to collect the interest, dividends and income thereof and, after paying taxes, expenses and the charges of administering said trust, to pay the net income re-maining, in quarterly installments, to the said Marshall Gulian Wilson during his life and from and after his death to pay the same as aforesaid to Marie Eugenie Wilson (*nee* Tanguy) his wife, and from and after the death of the said Marshall Gulian Wilson and his wife to pay the said net income as aforesaid to or for any child or children of said Marshall Gulian Wilson, in equal shares, if more than one, and as each such child shall attain his or her full age to pay over transfer and deliver to him or her his or her share of the corpus of the trust estate free and discharged from any trust as to the same. In case any such child shall die leaving issue surviving at the death of said grantor and his wife, then such issue shall take by representation the share which its parent

would have taken had he or she been living and of full age at that time. In case of the death of any such child before attaining full age, his or her issue surviving, or, in default of such issue his surviving brothers and sisters shall take his or her share. But in case there shall be no such child or descendant surviving the said Marshall Gulian Wilson, or in case all of his children shall die before attaining full age without issue, then the whole corpus of the trust estate shall, after death of the wife of said Marshall Gulian Wilson, become the absolute property of the said James G. Wilson and Josephine C. Wilson his wife and the survivor of them and the executors, administrators and assigns of the survivor."

Marshall Gulian Wilson died on June 4, 1905, without issue or descendants surviving him. He was, however, survived by his wife, who was named as sole legatee in his will, executed on April 30, 1901. After his death his widow, Marie Eugenie Wilson, intermarried with Henri Paul Marie Pichon, a citizen of France. This husband, Pichon, is described in the will of Marie Eugenie Pichon, (formerly Wilson), as her "common law second husband". Marie Eugenie Pichon died in France on March 23, 1944, having survived her first husband for thirty-nine years. Francois Simon, the appellant in this case, is the residuary legatee named in the French will of Marie Eugenie Pichon.

James G. Wilson, the father of the grantor, predeceased him, having died on June 1, 1904. He left a will in which he devised and bequeathed his entire estate to his surviving wife, Josephine C. Wilson, the mother of the grantor.

Josephine C. Wilson, also predeceased the grantor, but survived her husband, having died on March 12, 1905. By her will she left her entire estate to her husband, James G. Wilson, who had predeceased her.

James G. Wilson was survived by his widow and his said son, Marshall Gulian Wilson, the grantor, and by a sister and brother, Mary Bowly Wilson and William Bowly Wilson.

472

After Marshall Gulian Wilson's death the net income from the trust estate was paid to his widow, Marie Eugenie Pichon (formerly Wilson), until her death on March 23, 1944. Because of the war the trustee was unable to send the income to her during the latter years of her life. Upon her death, therefore, the trustee had on hand the sum of $2,307.88, which was due to her as income collected or accrued at the date of her death.

Whatever interest in the property, constituting the corpus of the trust estate, passed to Mary Bowly Wilson and William Bowly Wilson, the sister and brother of James G. Wilson, the father of the grantor, passed by mesne conveyance and inheritance to and now is the property of Melville Wilson as to a three-eighths interest; Virginia Marshall Wilson Randall as to a three-eighths interest; and Safe Deposit & Trust Company of Baltimore, Trustee Under the Will of Jane Marshall Wilson, Deceased, as to a two-eighths interest. J. Kemp Bartlett, Jr., Esquire, is Administrator C. T. A. of the Estate of Marie Eugenie Pichon, (formerly Marie Eugenie Wilson).

A bill of complaint was filed in the Circuit Court for Baltimore City, asking for a construction of the deed of trust and the proper distribution of the corpus and income. After hearing, the chancellor decreed that the unpaid income from the trust estate be distributed to J. Kemp Bartlett, Jr., Esquire, Administrator C. T. A. of the Estate of Marie Eugenie Pichon. This part of the decree of the chancellor is not contested by any of the parties to this case. He further decreed that the corpus of the trust, subject to the Maryland Collateral Inheritance Tax, be paid three-eighths to Melville Wilson, three-eighths to Virginia Marshall Wilson Randall, and two-eighths to the Safe Deposit & Trust Company of Baltimore, Trustee Under the Will of Jane Marshall Wilson, deceased.

From that decree, Francois Simon, residuary legatee under the will of Marie Eugenie Pichon (formerly Marie Eugenie Wilson, appeals to this Court.

The deed of trust in this case granted life estate containing two alternate provisions: First: If there were children of the grantor surviving him who had attained full age, the remainder would go to them absolutely; Second: If there were no such children of the grantor, the remainder would go to the grantor's father and mother or the survivor of them. The grantor of the trust having died without children and the father and mother of the grantor having predeceased him, the mother surviving the father, the chancellor found that the alternate contingent remainder to the survivor of the parents of Marshall Gulian Wilson, though still contingent at the time of the death of the survivor, Josephine C. Wilson, was devisable by her and passed under her will. The Maryland decisions have held that where the person to take a contingent remainder is specifically designated, such a remainder is devisable by the designated remainderman. Here the parents were designated by name. That finding of the chancellor is not disputed by any of the parties in this case and, in the opinion of this Court, was correct. *Hambleton v. Darrington*, 36 Md. 434, 444; *Fisher v. Wagner*, 109 Md. 243, 71 A. 999, 21 L. R. A., N. S., 121; *McClurg v. Myers*, 129 Md. 112, 98 A. 491; *Hammond v. Piper*, 185 Md. 314, 44 A. 2d 756; *Miller on Construction of Wills*, Section 234.

The lapsed legacy statute, Acts of 1810, Chapter 34 as amended, Code 1904, Article 93, Section 320, Code 1939, Article 93, Section 340, provides:

"No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described, or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator." This statute has

been construed to transfer the property directly to those who would be the representatives of the legatee had he died intestate. *Glenn v. Belt,* 7 Gill & Johnson 362; *Wallace v. Du Bois,* 65 Md. 153, 161, 4 A. 402; *Vogel v. Turnt,* 110 Md. 192, 72 A. 661.

The chancellor further found that the contingent remainder passed under the will of Josephine C. Wilson, the mother of the grantor, to the remaining next of kin of her husband, James G. Wilson: namely, Mary Bowly Wilson and William Bowly Wilson, the sister and brother of James G. Wilson. They were the remaining heirs at law and next of kin of James G. Wilson, upon the death of Marshall Gulian Wilson, the grantor, though not the heirs at law and next of kin of James G .Wilson as of the death of the testatrix, Josephine C. Wilson. The appellant contends that the heirs at law and next of kin of James G. Wilson are to be determined as of the date of the death of Josephine C. Wilson and that as the grantor, Marshall Gulian Wilson, was in being at that time, the contingent remainder passed under her will to her son, Marshall Gulian Wilson, as the heir at law and next of kin of James G. Wilson at that time, and passed under the will of Marshall Gulian Wilson to his widow, Marie Eugenie Wilson, (later Pichon), and under her will to her residuary legatee, Francois Simon, the appellant in this case. Of course, if the bequest had been a vested interest in personal property, such as a piece of jewelry, such would have been the case. Here, however, we have a contingent remainder in personal property. Chapter 325, Acts of 1916, Article 46, Sections 1, 2, 3, and 4, Annotated Code 1939, of course, was not in force when the contingent remainder here took effect.

The question for our decision is therefore narrowed to whether the heirs at law and next of kin of James G. Wilson, the father, are to be determined as of the date of the death of the testatrix, Josephine C. Wilson, or whether the heirs at law and next of kin of James G. Wilson are to be determined as of the date of the death of the grantor, Marshall Gulian Wilson.

In *Buck v. Lantz*, 49 Md. 439, a deed of trust conveyed real and personal property in trust for the use of the grantor during her life and, after her death, for the use of her daughter, Margaret Buck, during her life and after Margaret's death, then in trust as to the remainder for such child or children of Margaret as she might leave, but if Margaret died without leaving descendants surviving her, then in trust to convey the remainder to Mary Harwood, a sister of the grantor. The remainder to Mary Harwood was a contingent remainder. The sister, Mary, survived the grantor but died, intestate, before the daughter, Margaret, who afterwards died, unmarried and without issue. It was there held that the remainder vested in the heirs of Mary and that Margaret was an heir of Mary at the time of Mary's death, but since Mary was dead upon the happening of the contingency, (Margaret's death without issue), she was excluded as an intermediate heir of Mary. It was held that only those heirs of Mary who were living at the death of Margaret could take. It was there said by Judge Richard Grason at page 445 of 49 Md.: "It is clear that those only can take who were *in esse* at the time *when the contingency happened* and the estate fell into possession. That did not occur until after the death of Margaret Buck. She could not, therefore, be heir, or take or transmit any interest in the estate by will or otherwise. The case of *Barnitz's Lessee v. Casey*, 7 Cranc, U. S. 456, 469, 3 L. Ed. 403, is full to this point. The court there say that only those are heirs of John McConnell who were *in esse when the contingency happened* and the estate fell into possession. The court further say: 'This rule is adopted in analogy to that rule of descent which requires that a person who claims a fee simple descent from one who was first purchaser of the reversion or remainder expectant on a freehold estate must make himself heir of such purchaser *at the time* when that reversion or remainder falls into possession.' It was accordingly held that those who were heirs of John McConnell on the 12th of February, 1808, the date of *the happening of the con-*

*tingency,* were entitled to the estate, though he had died in 1802, six years before the contingency happened."

In the instant case Marshall G. Wilson, the grantor, was the life tenant with the contingent remainder to Josephine, the mother of the grantor. Josephine, the mother, died before the life tenant, Marshall G. Wilson, and upon the death of the life tenant, the remainder would have vested in the heirs of Josephine, had she died intestate, but the life tenant, who was dead when the contingency happened would have been excluded. The vital distinction, however, between the case at bar and that of *Buck v. Lantz, supra,* is that here Josephine, the contingent remainderman, *did not die intestate* but left a will. In the case of *Buck v. Lantz, supra,* Mary, the contingent remainderman, died intestate. See also *Fisher v. Wagner,* 109 Md. 243, 251, 71 A. 999, 21 L. R. A., N. S., 121.

The case of *Hammond v. Piper,* 185 Md. 314, 319, 44 A. 2d 756, is clear on this point. In that case two of the contingent remaindermen died before the contingency happened, (the death of the life tenant without issue). As to them, this Court held that the contingent remainders passed under their wills, citing *Fisher v. Wagner, supra.* In the case of *Fisher v. Wagner, supra, Buck v. Lantz, supra,* was distinguished and it was said at page 251 of 109 Md., at page 1002 of 71A, that the rule there announced "does not affect the other rule that an estate which is transmissible is devisable. That clearly means devisable by the designated remainderman, and it does not mean that it is devisable after the contingency happens, for then it is no longer a remainder, but has become the absolute property of the remainderman * * *". On the other hand, in *Hammond v. Piper, supra,* we applied the rule of *Barnitz's Lessee v. Casey, supra* (the Act of 1916, *supra,* being inapplicable), so as to exclude an intermediate heir of one of the contingent remaindermen, who died intestate. See also *Evans v. Safe Deposit & Trust Co.,* 190 Md. 332, 58 A. 2d 649.

From these cases it is clear that a remainder to a designated person, contingent as to the event, is devisable. Also in the case at bar the remainder created by the deed of trust was to "the survivor of them and the executors, administrators and assigns of the survivor" *i. e.*, Josephine, who survived James G. Wilson. Therefore, the deed itself bore evidence of an intent that the remainder might be devised.

It being perfectly clear that the contingent remainder to Josephine in the case at bar passed under her will, the only problem is to determine who takes under that will. Since James G. Wilson, the residuary legatee and devisee under the will of Josephine, predeceased her, the lapsed legacy statute came into effect and substituted James G. Wilson's representatives, *i. e.*, those persons *in esse* at the time of the testator's (Josephine's) death, who are entitled by law to the distribution of the legatee's estate in case of intestacy. The lapsed legacy statute took effect on Josephine's will at the time of her death and passed to the contingent remainder. That contingent remainder could not be "left in the air". *Hays v. Wright,* 43 Md. 122, quoted in *Redwood v. Howison,* 129 Md. 577, 589, 99 A. 863. In *Mayor and City Council of Baltimore v. White,* 189 Md. 571, 56 A. 2d 824, 826, we said: "The time of the transfer is the death of the testator. * * * The purpose of the lapsed legacy statute is to transfer the legacy to the legatee's distributees or 'representatives' instead of the testator's distributees or 'representatives'—to prevent intestacy * * *".

We therefore find that the heirs at law and next of kin of James G. Wilson, the residuary legatee and devisee of Josephine Wilson, are to be determined as of the date of the death of the testatrix, Josephine.

It follows, therefore, that Marshall G. Wilson, the grantor, who was the representative of James G. Wilson, at the time of the death of Josephine, when her will took effect, was the legatee and devisee of the contingent remainder which passed under Josephine's will. Marshall G. Wilson was not an intermediate heir within the rule

478

laid down in the case of *Barnitz v. Casey, supra,* but the devisee of a contingent remainder by force of the lapsed legacy statute operating on the will of Josephine Wilson. Upon the happening of the contingency, therefore, this legacy was a part of Marshall G. Wilson's estate, which passed under his will to his widow, Marie Eugenie Pichon, (formerly Marie Eugenie Wilson), and under her will to Francois Simon. There appears to be nothing in the lapsed legacy statute, or in the rule laid down in *Barnitz's Lessee v. Casey, supra,* to impose a condition of survivorship by Marshall G. Wilson, when there was no such condition imposed upon Josephine, the contingent remainderman. The decree will therefore be reversed in order that the corpus of the trust may be distributed to the appellant. The other parts of the decree, which are not contested, will be affirmed.

> *Decree affirmed in part, and reversed in part, and case remanded for the passage of a decree in conformity with this opinion, costs to be paid from the corpus of the trust estate.*